UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Artisan & Truckers Casualty Company,   Case No. 3:17-cv-2399

       Plaintiff,

  v.   MEMORANDUM OPINION
     AND ORDER

Meredith A. Miller, et al.,

       Defendants.

## I.    INTRODUCTION

Cross-Claimant Kirsch Transportation Services, Inc. moves for summary judgment on its crossclaim for a declaratory judgment. (Doc. No. 88). Parties Barry M. Creagan, Jr., Lauren M. Creagan, and Artisan & Truckers Casualty Company have indicated they do not oppose summary judgment on this claim. (Doc. Nos. 89 & 91). No other remaining party has filed anything by way of response to this motion.

## II.    BACKGROUND

On August 14, 2016, at 2:16 p.m. EST, Chavan Carter, driving a tractor-trailer, initiated a chain collision involving nine vehicles on the Ohio Turnpike in Groton Township, Erie County, Ohio. The tractor-trailer Carter was driving was owned by his employer, Natex Group, Inc. The shipment Carter was hauling had been brokered by Kirsch.

At the time of the collision, Natex had a commercial auto insurance policy through Artisan & Truckers Casualty Co. with a single limit of liability of $1 million ("Artisan Policy"). (Doc. No. 88-1). Kirsch was also listed as an insured under the Artisan Policy. (Doc. No. 88-2 at 4).

The Insuring Agreement of the Artisan Policy's Auto Coverage Part provides,

> if **[the insured]** pay[s] the premium for liability coverage for the **insured auto** involved, **[Artisan]** will pay damages, other than punitive or exemplary damages, for **bodily injury, property damage,** and **covered pollution cost or expense,** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto.**

(Doc. No. 88-1 at 78). An "insured auto" is defined as:

> a. Any **auto** specifically described on the **declarations page;** or
>
> b. An additional **auto** for Part I - Liability To Others and/or Part II - Damage To Your Auto on the date **you** become the owner if:
>     (i) **you** acquire the **auto** during the policy period shown on the **declarations page;**
>     (ii) **we** insure all **autos** owned by **you** that are used in **your** business;
>     (iii) no other insurance policy provides coverage for that **auto;** and
>     (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.
> …
> c. Any replacement **auto** on the date **you** become the owner if:
>     (i) **you** acquire the **auto** during the policy period shown on the **declarations page;**
>     (ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and
>     (iii) no other insurance policy provides coverage for that **auto.**
> If **we** provide coverage for a replacement **auto, we** will provide the same coverage for the replacement **auto as we** provide for the replaced **auto. We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto. We** will not provide any coverage after this 30 day period unless within this period **you** ask **us** to insure the replacement **auto.**

(*Id.* at 74-75).

Any vehicle that was not an "insured auto" under the Artisan Policy's Auto Coverage Part was covered only by the MCS-90 Endorsement. (*Id.* at 70). This Endorsement covered only Natex and provided that Artisan "shall not be liable for amounts in excess of $750,000 for each accident." (*Id.* at 69).

In this case, Natex made a down payment of $10,000 on the tractor-trailer involved in the collision to IGS Transportation, Inc. on July 13, 2016. (Doc. No. 88-3 at 16). But, because Natex

2

could not pay the full price of the tractor-trailer on that date and wanted to begin using it immediately, Natex and IGS also executed a Lease Agreement on July 13, 2016.. (*Id.* at 9-10, 18). The Lease Agreement provided that the tractor-trailer would be "owned and controlled" by "Equipment Owner" IGS, who would provide "Carrier" Natex with the right to operate the tractor-trailer including "loading, transporting, and unloading freight." (*Id.* at 18). As such, while IGS kept the title, Natex took the keys and the right to use the tractor-trailer on this date. (*Id.* at 12).

Two days later, on July 15, 2016, Natex made the final payment. (*Id.* at 13 & 16). At this time, the Bill of Sale was executed[1] and the title to the tractor-trailer was transferred to Natex. (*Id.* at 13 & 16). Natex did not request to add the tractor-trailer to the Artisan Policy's Auto Coverage Part until August 14, 2016, at 1:30 p.m. CST – approximately fifteen minutes after the accident occurred. (Doc. No. 88-4 at 2-3).

### III. STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

---

[1] A handwritten "Bill of Sale" was also executed indicating only that IGS "received" $10,000 for the tractor-trailer on July 13, 2016. (Doc. No. 88-3 at 17). The typewritten Bill of Sale executed on July 15, 2016, clearly states that the "total cost" of the tractor-trailer was received on that date and that Natex accepted receipt of the Bill of Sale with the understanding that the tractor-trailer was sold in "'as is' condition." (*Id.* at 16).

IV. DISCUSSION

Presently, Kirsch seeks a declaratory judgment, stating the following:

(1) that there is no coverage afforded under Artisan's Policy Auto Coverage Part for the claims arising out of the accident;
(2) that the coverage under the Artisan Policy's Auto Coverage Part for claims arising out of the Accident is limited to coverage under the MCS-90 Endorsement;
(3) that under the MCS-90 Endorsement, Artisan owes a duty of indemnification only for actual judgments against Natex, and no other party, up to the Endorsement's $750,000 limit; and
(4) that at the time of the Accident the insurance proceeds provided for under the MCS-90 Endorsement were not collectible by any party other than Natex.

(Doc. No. 88 at 3-4). If appropriate, I can award such relief under 28 U.S.C. § 2201(a).

A. **Artisan Policy's Auto Coverage Part**

As with any contract, this Illinois insurance contract[2] must be interpreted "to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1003 (Ill. 2010). In this case, the Artisan Policy's Auto Coverage Part defined an "insured auto" as "an additional auto…on the date you become the owner if…**you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage." (Doc. No. 88-1 at 74).

In Illinois, "the question [of] when ownership has passed from one person to another for purposes of insurance coverage is a question of the intention of the parties." *Finnan v. Johnson*, 444 N.E.2d 290, 293 (Ill. App. Ct. 1983).

Although Kirsch urges me to conclude "[t]he date a party takes possession is strong, if not conclusive, evidence that a transfer of ownership has occurred[,]" (Doc. No. 88 at 10), the inquiry is not so simple. In fact, even in *Finnan*, which Kirsch cites in support of its argument, the court did

---

[2] The Artisan Policy states that "[a]ny disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** business location." (Doc. No. 88-1 at 97). Natex's business location is listed on the Artisan Policy as Wheeling, Illinois. (*Id.* at 3).

4

not conclude ownership transferred on the date of possession. Instead, based on "uncontroverted testimony" that both parties "had intended that ownership of the truck would pass with the payment of the purchase price," the court concluded the day of payment was the date ownership transferred. *Finnan*, 444 N.E.2d at 293. Following the direction of *Finnan*, I must consider "the totality of the facts," *id.* at 294, to determine when the parties intended ownership of the tractor-trailer to transfer.

Available evidence of the parties' intent includes: the testimony of IGS representative Igor Sobkiv, the Lease Agreement, and the Bill of Sale. (Doc. No. 88-3). According to Sobkiv, on July 13, 2016, Natex made the down payment on the tractor-trailer and executed the Lease Agreement so Natex could immediately begin using the tractor-trailer. (Doc. No. 88-3 at 8-10). The Lease Agreement corroborates this testimony, as it gave Natex the right to operate the tractor-trailer including "loading, transporting, and unloading freight." (*Id.* at 18). Because the tractor-trailer had not been paid for in full, IGS retained the title and the Lease Agreement stated the tractor-trailer was still "owned and controlled" by IGS. (*Id.* at 8, 12, 18). Sobkiv affirmed that had Natex failed to pay the remaining balance, he would not give Natex the title. (*Id.* at 8). But Natex did pay the remainder of the balance two days later on July 15, 2016. (*Id.* at 16). At that time, Natex received the title and Bill of Sale. (*Id.* at 13, 16).

Based on these facts, it is not clear that the parties intended that ownership be transferred at the time Natex made the down payment and began using the tractor-trailer. There is no doubt that this situation was complicated. As put by Sobkiv, "Technically I don't have it but it's still kind of remain kind of in my possession kind of." (*Id.* at 10). But the Lease Agreement specifically provided that IGS retained ownership on July 13, 2016. Further, Sobkiv understood that IGS would own the title to the tractor-trailer until and unless Natex paid the remaining balance. As such, a genuine dispute remains as to whether the parties intended to transfer ownership on the day of the down payment or the day of the final payment.

If this dispute is resolved in favor of finding ownership of the tractor-trailer transferred on the date the final payment was made – July 15, 2016, Natex would have been required to notify Artisan that it acquired ownership of the tractor-trailer by August 14, 2016. Because Natex notified Artisan on August 14, 2016, albeit after the tractor-trailer was in the accident, the notification obligation would be satisfied. Thus, the genuine dispute as the date of ownership is material to the issue of coverage under the Artisan Policy Auto Coverage Part.

**B.    MCS-90 Endorsement**

The MCS-90 Endorsement states,

> [T]he insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from the negligence in the operation, maintenance or use of motor vehicles … regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.

(Doc. No. 88-1 at 70). This coverage is capped at $750,000 for each accident and restricted to the insured, Natex. (*Id.* at 69-70). By the plain language of the MCS-90 Endorsement, Artisan owes a duty of indemnification for judgments against MCS-90 insured Natex up to $750,000. This indemnification coverage is afforded only to Natex and no other party. No genuine dispute of fact exists as to these points.

## V.    CONCLUSION

For the foregoing reasons, I hereby grant, in part, and deny, in part, Kirsch's motion for summary judgment. (Doc. No. 88). Specifically, summary judgment is denied as to whether there is coverage afforded under Artisan's Policy Auto Coverage Part for the claims arising out of the accident. But summary judgment is granted as Artisan owes a duty of indemnification under the MCS-90 Endorsement only for actual judgments against Natex, and no other party, up to the Endorsement's $750,000 limit.

So Ordered.

                                                  s/ Jeffrey J. Helmick
                                                  United States District Judge